## McCASKILL v. LYON LUMBER CO.*
### No. 14754.

Court of Appeal of Louisiana. Orleans.
May 7, 1934.

J. G. Dempsey, Jr., of New Orleans, and Lucien J. Troxler, of Reserve, for appellant.

Leslie P. Beard, of New Orleans, for appellee.

JANVIER, Judge.

Nancy Jones McCaskill is the widow of Bert McCaskill, who died as the result of injuries sustained in an accident which arose out of and in the course of his employment by defendant, Lyon Lumber Company, Inc. She seeks compensation for 300 weeks, alleging that, although, at the time of the death, she and her husband had been living apart for some months, they had no intention of remaining away from each other permanently. She declares that the separation was the result solely of economic necessity and not of deliberate choice, that she remained dependent upon her said husband, and that during the said separation he had, with great regularity, sent her a substantial portion of his earnings.

Defendant company maintains that the separation was not merely the result of economic necessity, but that it was due to the mutual desire of plaintiff and of her husband to live apart, and that during the separation practically no financial assistance was extended by the said McCaskill to his wife, the plaintiff.

In the district court there was judgment for defendant, plaintiff's suit was dismissed, and she has appealed.

The record shows that plaintiff and McCaskill were married in Hattiesburg, Miss., on September 30, 1920, and that they lived together in various places in the South until some time in the year 1929, at which time plaintiff moved to Chicago, leaving her husband in a lumber camp in a small settlement in the state of Mississippi, and that, during the year 1930, she returned to this lumber camp and lived with him for a short period. She fixes the time at 8 weeks. It also appears that she then returned to Chicago and remained there from June or July, 1930, until a week or so after the death of her husband, which death occurred on July 7, 1931. During that time she and her husband did not see each other.

■ If plaintiff is to recover, she must show herself to have been dependent upon her husband for support at the time of his death, because, under the compensation laws of this state (Act No. 20 of 1914, as amended), in the event of the death of the employee, compensation is payable to the widow only if she be dependent upon the husband for support, and, while it is true that there is a conclusive presumption of dependency where the wife lives with the husband, this presumption is destroyed by proof that the wife and the husband have been living apart. Under subparagraphs (A) and (B) of subdivision 2 of section 8 of Act No. 242 of 1928, a wife, if living with her husband, is placed in the class

of persons who are conclusively presumed to be dependent. However, if she is not living with her husband, there is no such presumption, and, since the act provides for compensation to dependents only, a wife living separate from her husband is under the necessity of showing dependency.

In Gregory v. Standard Oil Co., 151 La. 228, 91 So. 717, 718, the Supreme Court clearly shows that persons who are not presumed to be dependent must prove dependency before recovery can be allowed. In that case the court said: "The statute * * * names two classes of persons 'who are entitled to recover compensation for the injury and death of an employee: (1) Those who are conclusively presumed to be dependent, and (2) those who are actually dependent upon the deceased employee, to any extent for support at the time of the injury and death. Those of the latter class are required to make proof of their dependency." See, also, Keyhea v. Woodard-Walker Lumber Co. (La. App.) 147 So. 830.

■■ If, in spite of physical separation, a widow can produce proof that, during the separation, she has been receiving financial support, and can show that the intention of the spouses to reunite has always subsisted, then dependency is shown sufficiently to permit recovery under the compensation laws. Plaintiff seeks to show that such was the case here, and that, though separated, she and her husband never relinquished the hope of reuniting, and that on each pay day he sent a portion of his earnings to her. In support of this contention she presents, as witnesses, A. C. Peters and his wife, Pearline, the latter of whom testified that, with great regularity, McCaskill had made remittances to plaintiff, and that in almost every instance he wrote her a letter in which the remittance was inclosed. Plaintiff is able to produce none of these letters, and, so far as written proof of her contention is concerned, she relies entirely on a letter written by McCaskill to his sister some time before his death and in which he, in a vague way, refers to the fact that he intends "to see my wife in August." Peters and his wife, Pearline, contradict each other in many particulars, and in other particulars their testimony differs from that offered by plaintiff herself. Plaintiff's testimony is contradictory in the extreme. She shows plainly that a certain document, which defendant contends was made up from statements made by her, contains references to facts, which references actually emanated from her. In this statement it appears that she voluntarily left her husband and that she had received practically no financial assistance from him during the separation. The statement was not signed by her, but was prepared by an insurance adjuster, who, according to his testimony and according to the statement made by his stenographer, obtained the information from plaintiff herself. It may be that the statement should not have been admitted in evidence, but it was offered to corroborate the testimony of the adjuster and of his stenographer to the effect that, when plaintiff appeared and made claim for compensation, her statements as to the status existing between herself and her husband prior to his death were substantially different from the statements which she made on the stand.

The testimony of plaintiff with reference to whether she had had any children is most confusing, and evidences a willingness to testify to any state of facts which will best serve her purpose.

Counsel for plaintiff cite many cases in which it has been held that mere separation is not sufficient to deprive a widow of her right to compensation. They call attention to Books v. Keen & Woolf Oil Co. et al., 9 La. App. 288, 120 So. 99; Harris et al. v. La. Oil Ref. Corp., 13 La. App. 416, 127 So. 40; Oliphant v. Louisiana Long Leaf Lbr. Co., 7 La. App. 521; Laurent v. Dendinger, Inc., 13 La. App. 234, 126 So. 600, 127 So. 755, and Keyhea v. Woodard-Walker Lbr. Co.. supra. There is no doubt that mere separation cannot defeat a claim of a widow, but where, in such case, the widow fails to show dependency and where the proof is rather convincing that the separation was voluntary, the widow is not a dependent within the contemplation of the compensation laws of this state.

At any rate, only questions of fact are involved: Was the separation voluntary and was there dependency during the separation? Our brother below has answered these interesting questions, and has made a finding against plaintiff. We cannot find in the record justification for a reversal.

The judgment appealed from is affirmed.

Affirmed.